NO. 23-1344

In The

# United States Court Of Appeals
# For The Fourth Circuit

**LESLIE ATKINSON,**

*Plaintiff – Appellee,*

v.

**BRENT GODFREY, In his individual capacity as a law enforcement officer with the Harnett County Sheriffs Office; WAYNE COATS, In his official capacity as Sheriff of Harnett County, North Carolina,**

*Defendants – Appellants,*

and

**JOHN DOE, as Surety,**

*Defendant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AT GREENSBORO**

————————

**BRIEF OF APPELLANTS**

————————

Brian F. Castro
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC  27601
(919) 755-8135

*Counsel for Appellants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1344__     Caption: __Leslie Atkinson v. Brent Godfrey__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Brent Godfrey__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                        ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                  ☐YES ☑NO
     If yes, identify entity and nature of interest:


5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:


6.   Does this case arise out of a bankruptcy proceeding?                   ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.


7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.


Signature: /s/ Brian F. Castro                          Date:        4/3/2023

Counsel for: Brent Godfrey

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __23-1344__        Caption: __Leslie Atkinson v. Brent Godfrey__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Sheriff Wayne Coats__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.     Does party/amicus have any parent corporations?                ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                            ☐YES ☑NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                    ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                            ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?            ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Brian F. Castro                          Date:      4/3/2023

Counsel for: Sheriff Wayne Coats

Print to PDF for Filing

# TABLE OF CONTENTS

PAGE:

TABLE OF AUTHORITIES ...................................................................... iii

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT OF THE ISSUES ................................................................ 2

STATEMENT OF THE CASE .................................................................... 3

    I.    Summary ................................................................... 3

    II.    Factual Allegations ................................................ 4

        A.    Facts Leading to the Repossession of Plaintiff's Vehicle ........................................ 5

        B.    Plaintiff's Confrontation with Private Towing Company, Prior to Any Involvement of Defendants ........................................... 5

        C.    Deputy Godfrey's After-the-Fact Arrival at the Scene, Plaintiff's Conclusory Allegations as to Sheriff Coats ............................................... 6

    III.    Procedural History ................................................ 9

SUMMARY OF ARGUMENTS ................................................................. 10

ARGUMENT ........................................................................................... 11

    I.    Standard of Review .............................................. 11

    II.    The District Court Erred in Denying Deputy Godfrey Qualified Immunity and Failed to Cite Any Case Law Showing a Clearly Established Right ................................... 12

        A.    Overview of Qualified Immunity ................................. 12

i

B.   Plaintiff Failed to Plausibly Allege Any Violation of Her Constitutional Rights ........................................ 15

1.   Without the Requisite "State Action" or "Color of Law," Plaintiff's Claims Fail in Their Entirety ...................................................... 15

2.   The Difference Between Active and De Minimis Involvement in the Context of Vehicle Repossessions ......................................... 17

3.   Plaintiff's Allegations Fall Far Short of State Action ................................................................... 23

C.   Even Assuming Arguendo that Plaintiff Plausibly Alleged a Constitutional Violation, Deputy Godfrey is Entitled to Qualified Immunity Because it was Not Clearly Established, or "Beyond Debate," that His Specific Actions Were Unconstitutional ........................................................ 26

III.   Absent an Underlying Constitutional Violation or Municipal Action, the Claims Against Sheriff Coats Also Fail ......................................................................... 30

CONCLUSION ......................................................................... 33

REQUEST FOR ORAL ARGUMENT ................................................ 34

CERTIFICATE OF COMPLIANCE .................................................. 35

TABLE OF AUTHORITIES

PAGE(S):

CASES:

*Anderson v. Creighton,*
    483 U.S. 635 (1987) ....................................................................... 14

*Andrews v. Federal Home Loan Bank of Atlanta,*
    998 F.2d 214 (4th Cir. 1993) ........................................................ 17

*Ashcroft v. al-Kidd,*
    131 S. Ct. 2074 (2011) ............................................................. 14, 28

*Barrett v. Harwood,*
    189 F.3d 297 (2d Cir. 1999)...................................................... 19, 24

*Belcher v. Oliver,*
    898 F.2d 32 (4th Cir. 1990) ........................................................... 31

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................... 12

*Brown v. City of Philadelphia,*
    No. 10-CV-2687, 2012 WL 1765440,
    2012 U.S. Dist. LEXIS 68851 (E.D. Pa. May 16, 2012) ......... *passim*

*Bulger v. Hurwitz,*
    62 F.4th 127 (4th Cir. 2023).......................................................... 11

*City and County of San Francisco, Calif. v. Sheehan,*
    135 S. Ct. 1765 (2015) ................................................................... 13

*City of Los Angeles v. Heller,*
    475 U.S. 796 (1986) ....................................................................... 31

*City of Oklahoma City v. Tuttle,*
    471 U.S. 808 (1985) ....................................................................... 32

*City of Tahleqah, Oklahoma v. Bond,*
  595 U.S. ___, 142 S. Ct. 9, 2021 WL 4822664 (2021) ..................... 15

*Cloaninger v. McDevitt,*
  555 F.3d 324 (4th Cir. 2009) ....................................................... 15

*Collins v. City of Harker Heights,*
  503 U.S. 115 (1992) ................................................................ 31, 32

*Crawford-El v. Britton,*
  523 U.S. 574 (1998) ...................................................................... 12

*Davison v. Randall,*
  912 F.3d 666 (4th Cir. 2019) ....................................................... 16

*Doe v. Broderick,*
  225 F.3d 440 (4th Cir. 2000) ....................................................... 14

*Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.,*
  213 F.3d 175 (4th Cir. 2000) .................................................... 11-12

*Estate of Armstrong v. Vill. of Pinehurst,*
  810 F.3d 892 (4th Cir. 2016) ....................................................... 28

*Evans v. B.F. Perkins Co.,*
  166 F.3d 642 (4th Cir. 1999) ....................................................... 11

*Flagg Bros. Inc. v. Brooks,*
  436 U.S. 149 (1978) ...................................................................... 17

*Fuentes v. Shevin,*
  407 U.S. 67 (1972) .................................................................. 27, 28

*Goard v. Crown Auto, Inc.,*
  170 F. Supp. 3d 915 (W.D. Va. 2016) .......................................... 27

*Groman v. Twp. of Manalapan,*
  47 F.3d 628 (3d Cir. 1995) .......................................................... 16

*Henry v. Purnell,*
    501 F.3d 374 (4th Cir. 2007) ............................................................. 12

*Herman v. Lackey,*
    309 F. App'x 778 (4th Cir. 2009) ............................................... 11, 17

*Hill v. Crum,*
    727 F.3d 312 (4th Cir. 2013) ......................................................... 14

*Jackson v. Holley,*
    666 Fed. App'x 242 (4th Cir. 2016) ............................................... 15

*Jenkins v. Medford,*
    119 F.3d 1156 (4th Cir. 1997) .................................................... 1, 15

*Jett v. Dallas Independent School District,*
    491 U.S. 701 (1989) ....................................................................... 32

*Kentucky v. Graham,*
    473 U.S. 159 (1985) ....................................................................... 30

*Kincaid v. City of Edwardsville,*
    No. 09-cv-350-WDS, 2010 WL 3937394,
    2010 U.S. Dist. LEXIS 105517 (S.D. Ill. Oct. 4, 2010) .................. 29

*Kisela v. Hughes,*
    138 S. Ct. 1148 (2018) ....................................................... 13, 14, 15

*Livingston v. Kehagias,*
    803 Fed. Appx. 673 (4th Cir. 2020) ................................................. 8

*Maciariello v. Sumner,*
    973 F.2d 295 (4th Cir. 1992), *cert. denied,*
    506 U.S. 1080 (1993) ..................................................................... 14

*Mann v. Hillsborough Cty. Sheriff's Office,*
    946 F. Supp. 962 (M.D. Fla. 1996) ..................................... 18, 21, 25

*McIntosh v. Skid Row Hous. Tr.*,
　　No. CV 13-4143 RGK (AJW),
　　2014 U.S. Dist. LEXIS 100551 (C.D. Cal. May 29, 2014).........19-20

*McWaters v. Cosby*,
　　54 F. App'x 379 (4th Cir. 2002) ........................................................ 1

*Menchaca v. Chrysler Credit Corp.*,
　　613 F.2d 507 (5th Cir. 1980) ........................................ 16, 18, 19, 20

*Meyers v. Baltimore County, Md.*,
　　713 F.3d 723 (4th Cir. 2013) .......................................................... 14

*Meyers v. Redwood City*,
　　400 F.3d 765 (9th Cir. 2005) .......................................................... 29

*Monell v. Dep't of Soc. Servs.*,
　　436 U.S. 658 (1978) ................................................................... 3, 32

*Morozov v. Howard Cty.*,
　　No. MJG-10-1515, 2013 WL 2338779,
　　2013 U.S. Dist. LEXIS 74603 (D. Md. May 28, 2013).............. 18, 28

*Mullenix v. Luna*,
　　136 S. Ct. 305 (2015) ............................................................. *passim*

*Nero v. Mosby*,
　　890 F.3d 106 (4th Cir. 2018) ............................................................ 2

*Pearson v. Callahan*,
　　555 U.S. 223 (2009) ....................................................................... 13

*Pembaur v. City of Cincinnati*,
　　475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) ................. 32

*Philips v. Pitt Cty. Mem'l Hosp.*,
　　572 F.3d 176 (4th Cir. 2009) .......................................................... 16

*Republican Party of N.C. v. Martin*,
　　980 F.2d 943 (4th Cir. 1992) .......................................................... 11

vi

*Ridpath v. Board of Governors Marshall Univ.*,
    447 F.3d 292 (4th Cir. 2006) .......................................................... 13

*Rivas-Villegas v. Cortesluna*,
    595 U.S. ___, 142 S. Ct. 4, 2021 WL 4822662 (2021).................... 15

*Robinson v. Am. Honda Motor Corp., Inc.*,
    551 F.3d 218 (4th Cir. 2009) .......................................................... 12

*Saucier v. Katz*,
    533 U.S. 194 (2001) ..................................................................*passim*

*Scott v. Family Dollar Stores, Inc.*,
    733 F.3d 105 (4th Cir. 2013) ............................................................ 2

*Sherry v. Associates Comm. Corp.*,
    60 F. Supp. 2d 470 (W.D. Pa. 1998), *affirmed*,
    191 F.3d 445 (3d Cir. 1999)....................................................*passim*

*Slattery v. Rizzo*,
    939 F.2d 213 (4th Cir. 1991) .......................................................... 14

*Smith v. McCarthy*,
    349 F. App'x 851 (4th Cir. 2009) .................................................... 11

*Soldal v. Cook Cty.*,
    506 U.S. 56, 113 S. Ct. 538 (1992) ................................................. 27

*Staten v. Panola Cty.*,
    No. 2:13CV483-RSP, 2013 WL 6491443,
    2013 U.S. Dist. LEXIS 174384 (E.D. Tex. Dec. 10, 2013) ............ 29

*Stevenson v. Martin County Board of Education*,
    3 Fed. App'x 25 (4th Cir. 2001) ..................................................... 31

*Thomas v. The Salvation Army S. Territory*,
    841 F.3d 632 (4th Cir. 2016) .......................................................... 17

*West v. Atkins*,
    487 U.S. 42 (1988) .......................................................................... 16

*Wilson v. Layne*,
    141 F.3d 111 (4th Cir. 1998) ........................................ 14

*Wood v. Moss*,
    572 U.S. 744 (2014) .................................................... 12

*Zitta v. Graham*,
    996 F. Supp. 2d 272 (D. Vt. 2014) ............................ 19, 24

**STATUTES:**

28 U.S.C. § 1331 ........................................................... 1

42 U.S.C. § 1983 ..................................................... *passim*

**CONSTITUTIONAL PROVISIONS:**

U.S. Const. amend. IV .................................................. 1, 9

U.S. Const. amend. V ................................................... 1, 9

U.S. Const. amend. XIV ............................................ 1, 9, 16

**RULES:**

Fed. R. Civ. P. 12(b)(1) ............................................. 9, 11

Fed. R. Civ. P. 12(b)(6) ........................................... *passim*

## JURISDICTIONAL STATEMENT

This case arises under the Fourth and Fifth Amendments to the United States Constitution, as incorporated to the state of North Carolina by the Fourteenth Amendment. The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331. The District Court denied the motion to dismiss of Defendants-Appellants Deputy Brent Godfrey ("Deputy Godfrey") and Sheriff Wayne Coats ("Sheriff Coats") on March 9, 2023. JA41-56 (hereinafter the "Order"). Defendants timely filed their Notice of Appeal on March 29, 2023. JA57–59.

In its Order, the District Court denied Deputy Godfrey's motion to dismiss, which was based on qualified immunity. *See* JA52–54. Thus, this Court has jurisdiction over this appeal pursuant to the collateral order doctrine. *See McWaters v. Cosby*, 54 F. App'x 379, 382 (4th Cir. 2002); *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) ("When a district court denies a motion to dismiss that is based on qualified immunity, … the action is a final order reviewable by this court."). Furthermore, this Court has pendent appellate jurisdiction over the appeal of Sheriff Coats because it is "inextricably intertwined" and the "'resolution of the appealable issue necessarily resolves'" Sheriff Coats'

appeal in its entirety. *Nero v. Mosby*, 890 F.3d 106, 123 (4th Cir. 2018) (quoting *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 111 (4th Cir. 2013)).

### STATEMENT OF THE ISSUES

1.     Did the District Court err in denying qualified immunity and ruling that Deputy Godfrey's *de minimis* involvement—*i.e.*, the simple act of ordering Plaintiff out of the vehicle after the private repossessor already lifted and attempted to tow the vehicle, after Plaintiff had already breached the peace, and after a chaotic confrontation already began between Plaintiff and the private repossessor—plausibly alleged "state action" or "color of law" under 42 U.S.C. § 1983?

2.     Did the District Court err in ruling that Deputy Godfrey is not entitled to qualified immunity when the Complaint alleges *de minimis* involvement by Deputy Godfrey in the chaotic private vehicle repossession at issue, and there are no controlling cases in the U.S. Supreme Court or Fourth Circuit which speak to the particular facts of this case or even address vehicular repossessions generally?

3.     Given the lack of plausible allegations of an underlying constitutional violation, lack of state action, and lack of sufficient

2

allegations of a widespread policy or practice under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), did the District Court err in denying Sheriff Coats' motion to dismiss?

**STATEMENT OF THE CASE**

## I.  <u>Summary</u>

This action involves the repossession of Plaintiff Leslie Atkinson's ("Plaintiff") vehicle by private parties, and Deputy Godfrey's arrival at the scene after an attempted repossession had already commenced—after the tow truck had its tow bar under the vehicle, and the vehicle was lifted from the ground by the private repossessor. The District Court erred in ruling that Plaintiff plausibly alleged 42 U.S.C. § 1983 ("Section 1983") claims against the Defendants based on the mere fact that—after a private party had already arrived to Plaintiff's residence and attempted to connect the vehicle to the tow truck, after Plaintiff was already in the vehicle in an attempt to thwart the repossession, and after the vehicle was already lifted from the ground by the tow truck—a deputy was dispatched to the scene and ordered the Plaintiff to exit the vehicle.

As reiterated by federal district and appellate courts, ordering a party to exit a vehicle after a breach of the peace has occurred is

insufficient to amount to "state action" and does not meet the "color of law" requirement under Section 1983. It would be inappropriate under Section 1983, and against public policy, to allow constitutional claims to stem from a deputy's *de minimis* efforts to address a chaotic breach of the peace caused by the plaintiff. Furthermore, there is no case law within the Fourth Circuit which would clearly establish that a constitutional violation occurred or would allow for such a claim to survive. In ruling that Deputy Godfrey violated clearly established law, the District Court failed to identify any binding or analogous case law, and instead relied on general propositions, which is prohibited by *Mullenix v. Luna*, 136 S. Ct. 305, 308-09, 312 (2015) (per curiam). Absent actionable claims against Deputy Godfrey, the claims against Sheriff Coats also necessarily fail. For the reasons stated herein, this Court should reverse the District Court's denial of Defendants' motion to dismiss.

## II.    **Factual Allegations**

As set forth in the Complaint, and focusing on the allegations directed to the Defendants, Plaintiff alleges the following:

## A.   Facts Leading to the Repossession of Plaintiff's Vehicle.

Plaintiff alleges that she purchased a vehicle in January of 2019, and that she entered into a retail installment sales contract ("RISC") so that she could actually purchase it. (Compl. ¶¶ 48-54, JA14.) As is common in such transactions, the RISC granted Defendant Credit Acceptance Corporation ("CAC") a security interest and right to repossess the vehicle in the event of Plaintiff's default. (*Id.*) Eventually, when Plaintiff defaulted, CAC engaged Primeritus Financial Services, Inc. ("PFS") to repossess the vehicle, and PFS, in turn, hired Carolina Repo LLC to repossess the vehicle. (*Id.* ¶¶ 55-56, JA14.)

## B.   Plaintiff's Confrontation with Private Towing Company, Prior to Any Involvement of Defendants.

Plaintiff alleges that an employee of Carolina Repo LLC ("CR") went to Plaintiff's residence on the night of January 18, 2022, at around 11:00 p.m., in an effort to repossess the vehicle, and that Plaintiff jumped into the vehicle to evade the repossession when CR was already approaching the vehicle and in the process of attempting to repossess it. (Compl. ¶¶ 57-67, JA14–15.) Specifically, CR "back[ed] up its truck toward the [v]ehicle" before Plaintiff jumped into it and "continued

backing up and slid its tow bar under the [v]ehicle." (*Id.*) After sliding the tow bar under the vehicle, "CR then lifted the [v]ehicle by its bumper while" Plaintiff attempted to drive away. (*Id.* ¶¶ 63-64, JA15.) Plaintiff continued to attempt to drive away, spun the wheels and placed herself and CR at risk while the vehicle was lifted the tow truck, but finally placed the car in park when she realized she could not drive away. (*Id.* ¶¶ 64-67, JA15.) Plaintiff then refused to exit the vehicle and insisted that it be detached from CR's tow truck. (*Id.* ¶¶ 68-72, JA15.) While the vehicle was suspended in the air by CR's tow truck, Plaintiff and CR began arguing amongst themselves: CR demanded that Plaintiff exit the vehicle, and "Plaintiff demanded CR drop the [v]ehicle and leave." (*Id.* ¶¶ 68-69, JA15.) This chaotic scene between the CR employee and the Plaintiff all occurred <u>before</u> the Defendants were involved in any way or had any interactions with Plaintiff. (*Id.* ¶¶ 57-73, JA14–15.)

## C. Deputy Godfrey's After-the-Fact Arrival at the Scene, Plaintiff's Conclusory Allegations as to Sheriff Coats.

Importantly, the Harnett County Sheriff's Office ("HCSO") was not aware of the repossession, was not present at the scene, and was not involved in any way before the aforementioned confrontation began. (Compl. ¶¶ 57-73, JA14–15.) Plaintiff has not alleged that Defendants

6

accompanied CR onto Plaintiff's property or that Defendants assisted CR with using the tow bar or lifting the vehicle. (*Id.*) Prior to Deputy Godfrey's arrival, CR had already "slid its town bar under the" vehicle, already "lifted the vehicle by its bumper," and had instructed Plaintiff to exit the lifted vehicle so that it could be towed away. (*Id.*) Before any involvement by Defendants, Plaintiff and CR were already arguing, while the vehicle was attached and lifted by CR's tow truck, at around 11:00 p.m. at night. (*Id.* ¶¶ 63-72, JA15.) Thereafter, CR called the HCSO and informed the HCSO that it was performing a repossession and that Plaintiff was in the vehicle and physically interfering with the repossession. (*Id.* ¶¶ 73-81, JA15–16.)

As to the HCSO generally, Plaintiff complains that the HCSO did not give CR legal advice or tell CR to leave at that time. (*Id.*) Plaintiff alleges in a conclusory fashion that the HCSO regularly assists parties and has a policy of assisting parties with the repossession of collateral, and that it does not train its employees regarding such repossessions and regarding "civil standby." (*Id.* ¶¶ 82-87, JA15–16.) Plaintiff alleges that HCSO confirmed that Plaintiff had no outstanding warrants at CR's

request, and ultimately sent Defendant Godfrey, deputy of the HCSO, to Plaintiff's home. (*Id.* ¶¶ 90-94, JA17.)

Once he arrived, Deputy Godfrey saw Plaintiff in the vehicle and that the vehicle was already "lifted into the air [with] CR's tow bar dangerously holding the [v]ehicle by its bumper." (*Id.* ¶¶ 95-105, JA18–19.) Plaintiff and CR each spoke to Deputy Godfrey about the situation, Deputy "Godfrey approached [Plaintiff], who was still sitting in the Vehicle[,]" Deputy Godfrey "ordered [Plaintiff] to exit the [v]ehicle so that CR could repossess it," and Plaintiff exited the vehicle because she felt intimidated. (*Id.* ¶¶ 95-103, JA18.) As alleged by Plaintiff, HCSO's only involvement was speaking to CR over the phone, arriving to the scene after the vehicle was already lifted from the ground by the tow truck, and ordering Plaintiff to get out of the vehicle thereafter. (*Id.* ¶¶ 73-81, 90-105, JA15–18.)

Plaintiff's Complaint also refers to matters wholly unrelated to vehicle repossessions, including *Livingston v. Kehagias*, 803 Fed. Appx. 673 (4th Cir. 2020), a case regarding alleged unwarranted entries into homes and excessive force; Plaintiff likewise refers to the alleged disregard of COVID-19 eviction moratoria. (*Id.* ¶¶ 109-111, JA19; *see also*

8

*id.* ¶¶ 30-41, JA12–13.) Plaintiff alleges that Defendants should be held liable because Deputy Godfrey ordered Plaintiff out of the vehicle, which was already lifted by the tow truck, and because the HCSO regularly assists private parties with repossessions despite breaches of the peace. (*Id.* ¶¶ 163-194, JA31–35.) While Plaintiff has made multiple boilerplate averments, she has not pointed to any other actual incidents where the HCSO became actively involved in a repossession or assisted in an unlawful repossession. (*See id.*)

## III.  <u>Procedural History</u>

On May 12, 2022, Plaintiff filed her Complaint in District Court, alleging that Defendants violated the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution due to their involvement in the repossession of Plaintiff's vehicle.  *See* Compl. ¶¶ 163-194, JA31–36.  On June 21, 2022, Defendants filed a Motion to Dismiss the claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  JA38–40. The District Court denied Defendants' motion to dismiss on March 9, 2023.  JA41–56.

Defendants filed a Notice of Appeal on March 29, 2022.  JA57–59. After receiving extensions of time (Doc. 14), Defendants now timely

submit this initial Brief of Appellants, and ask the Court to reverse the order and judgment of the District Court.

<u>SUMMARY OF ARGUMENTS</u>

Even taking Plaintiff's Complaint in its entirety as true and considering Plaintiff's contentions in the light most favorable to her, precedent from various federal district and appellate courts makes it clear that Plaintiff has not, and cannot, plausibly allege sufficient state action on behalf of the Defendants as required under Section 1983, nor has she plausibly alleged that Deputy Godfrey was acting under color of law when he arrived to the chaotic scene of a vehicle repossession after a private repossessor had already attempted to connect the vehicle to his tow truck, a breach of the peace had already occurred, and Deputy Godfrey took the *de minimis* step of ordering the Plaintiff out of the vehicle.

Nothing in the Complaint shows a violation of Plaintiff's constitutional rights, and there is not any precedent in the U.S. Supreme Court, U.S. Court of Appeals for the Fourth Circuit, or the District Courts of North Carolina, which would place Deputy Godfrey on notice of a violation of a clearly established right. Consequently, the District Court

erred in ruling that Deputy Godfrey was not entitled to qualified immunity, and it erred in denying Defendants' motion to dismiss. For the reasons stated herein, the Court should reverse the District Court's denial of Defendants' motion to dismiss and direct the District Court to dismiss Plaintiff's action with prejudice.

## ARGUMENT

## I. **Standard of Review.**

"As a preliminary matter, this court reviews the district court's grant of a motion to dismiss pursuant to either Fed. R. Civ. P. 12(b)(1) … under a de novo standard of review." *Smith v. McCarthy*, 349 F. App'x 851, 856 (4th Cir. 2009) (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)); *see also Bulger v. Hurwitz*, 62 F.4th 127, 135 (4th Cir. 2023). This Court also reviews Rule 12(b)(6) motions to dismiss de novo, "accepting all allegations in [Plaintiff's Complaint] as true." *Herman v. Lackey*, 309 F. App'x 778, 781 (4th Cir. 2009) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, the Court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore*

*Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000). To survive a Rule 12(b)(6) motion to dismiss, the facts alleged "must be enough to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Robinson v. Am. Honda Motor Corp., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

## II.  **The District Court Erred in Denying Deputy Godfrey Qualified Immunity and Failed to Cite Any Case Law Showing a Clearly Established Right.**

### A.  **Overview of Qualified Immunity.**

A court required to rule upon the qualified immunity issue should first consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts ... show [that] the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Wood v. Moss*, 572 U.S. 744, 757 (2014). The plaintiff bears the burden of proof of proving that a constitutional violation occurred. *See Henry v. Purnell*, 501 F.3d 374, 377-8 (4th Cir. 2007); *Crawford-El v. Britton*, 523 U.S. 574, 588-589 (1998). If, in the light most favorable to plaintiff, there has been no constitutional violation, then the analysis ends: the officer is entitled to qualified immunity. *Saucier, supra.*

However, if the facts could establish a constitutional violation, the Court must analyze whether the constitutional right alleged to have been violated was "clearly established" at the time of the officer's actions. *Id.*[1] In considering this second prong of the *Saucier* framework, the key issue is whether the law "gave the officials 'fair warning' that their conduct was unconstitutional." *Ridpath v. Board of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006). In order for an officer to lose the protection of qualified immunity, existing precedent at the time of the occurrence must show that it was "beyond debate" that the officer's specific actions violated the Constitution. *Mullenix*, 136 S. Ct. at 308-09; *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018) (per curiam); *City and County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015). Thus, the inquiry into whether the right was clearly established <u>must</u> "be undertaken in light of the specific context of the case" and "not as a broad general proposition ...." *Saucier*, *supra*. Also, "[b]ecause the focus is on whether the officer had fair notice that [his] conduct was unlawful,

---

[1] In *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009), the Supreme Court granted courts discretion over the order of application of the *Saucier* analysis, while recognizing that conducting the analysis in order is often beneficial. *Id.*

reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, *supra*; *see also*, *e.g.*, *Meyers v. Baltimore County, Md.*, 713 F.3d 723, 731 (4th Cir. 2013).

Officers are entitled to qualified immunity "if a reasonable officer possessing the same information <u>could have believed</u> that his conduct was lawful." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (emphasis added). The "safe harbor" of qualified immunity "ensures that officers will not be liable for bad guesses in gray areas but only for transgressing bright lines." *Doe v. Broderick*, 225 F.3d 440, 453 (4th Cir. 2000) (internal quotations omitted); *see also Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998) (en banc); *Hill v. Crum*, 727 F.3d 312, 321-22 (4th Cir. 2013); *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993). Thus, an officer will be entitled to qualified immunity unless "every reasonable official would have understood that what he [was] doing" violated the Constitution. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). An inquiry under the qualified immunity analysis must be particularized and fact-specific. *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987). In cases such as the instant case, "in which the result depends very much" on the specific factual scenario,

14

the officers will be entitled to qualified immunity "unless existing precedent 'squarely governs' the specific facts at issue." *Kisela*, 138 S. Ct. at 1153 (quoting *Mullenix*, 136 S. Ct. at 309). The United States Supreme Court has emphasized the continued vitality of the qualified immunity doctrine in the recent cases of *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. ___, 142 S. Ct. 9, 2021 WL 4822664 (2021) and *Rivas-Villegas v. Cortesluna*, 595 U.S. ___, 142 S. Ct. 4, 2021 WL 4822662 (2021).

"Unless the plaintiff's allegations state a claim of violation of clearly established law, defendant[s] pleading qualified immunity [are] entitled to dismissal before the commencement of discovery," including at the Rule 12(b)(6) stage. *See Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009) (citation omitted); *see also Jackson v. Holley*, 666 Fed. App'x 242, 244-45 (4th Cir. 2016); *Jenkins*, 119 F.3d at 1159.

## B. Plaintiff Failed to Plausibly Allege Any Violation of Her Constitutional Rights.

### 1. *Without the Requisite "State Action" or "Color of Law," Plaintiff's Claims Fail in Their Entirety*.

To state a claim under Section 1983, a plaintiff must show both an "alleged constitutional deprivation," and that the alleged deprivation "occurred because of action taken by the defendant 'under color of ... state

15

law.'" *Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) (the "color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law"). Absent sufficient allegations of "state action," federal courts also lack subject matter jurisdiction over an attempted Section 1983 claim. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 513 (5th Cir. 1980).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (cleaned up). The "color of law" requirement is "synonymous with the more familiar state-action requirement applicable to Fourteenth Amendment claims, and the analysis for each is identical." *Davison*, 912 F.3d at 679 (cleaned up).

To act under color of state law, a defendant must be "clothed with the authority of state law." *West*, 487 U.S. at 49. "The color of law requirement excludes from its reach merely private conduct, no matter

16

how discriminatory or wrongful." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016). Dismissal is appropriate where a complaint fails to plausibly allege that a state actor has either:

> "[C]oerced the private actor to commit an act that would be unconstitutional if done by the state, … sought to evade a clear constitutional duty through delegation to a private actor, ... delegated a traditionally and exclusively public function to a private sector, or ... committed an unconstitutional act in the course of enforcing a right of a private citizen."

*Herman v. Lackey*, 309 F. App'x 778, 782-83 (4th Cir. 2009) (quoting *Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993)). Here, Plaintiff has not alleged any of the above.

2. *The Difference Between Active and De Minimis Involvement in the Context of Vehicle Repossessions.*

The "color of law" requirement is not automatically established by an officer's mere involvement in a given incident, even when the officer is a named defendant. *See Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 164 (1978) (noting that the Supreme Court has never held that state's "mere acquiescence in a private action converts that action into that of the State").

While the U.S. Court of Appeals for the Fourth Circuit has yet to address the interplay between the "color of law" requirement and law

17

enforcement involvement in vehicle repossession, other districts have resolved this issue in Defendants' favor. *See Morozov v. Howard Cty.*, No. MJG-10-1515, 2013 WL 2338779, 2013 U.S. Dist. LEXIS 74603, at *10 (D. Md. May 28, 2013) (noting that "the Fourth Circuit has not had the occasion to examine the state action issue in the context of police involvement with a private repossession."); *see, e.g.*, *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980); *Sherry v. Associates Comm. Corp.*, 60 F. Supp. 2d 470 (W.D. Pa. 1998), *affirmed*, 191 F.3d 445 (3d Cir. 1999); *Brown v. City of Philadelphia*, No. 10-CV-2687, 2012 WL 1765440, 2012 U.S. Dist. LEXIS 68851 (E.D. Pa. May 16, 2012); *Mann v. Hillsborough Cty. Sheriff's Office*, 946 F. Supp. 962 (M.D. Fla. 1996). As discussed below, this Court should follow the reasoning in the above-cited cases and hold that the Deputy Godfrey's alleged actions in this case did not amount to "state action" or otherwise satisfy the "color of law" prerequisite for Section 1983 liability.

In *Menchaca v. Chrysler Credit Corp.*, the Fifth Circuit recognized that Section 1983 claims can be dismissed even when an officer's actions go beyond mere presence at the scene of a vehicle repossession. *Menchaca*, 613 F.2d at 510-513. In that case, the repossessors summoned

law enforcement officers *after* the plaintiff-debtor resisted attempts to repossess his car, refusing to allow them to take his vehicle. *Id.* The officers arrived and threatened to arrest the plaintiff if he did not give up the keys to the vehicle. *Id.* Since the repossessors were already on the scene and in the midst of the repossession prior to the officers' involvement, and the officers' *de minimis* action was that of keeping the peace and asking the plaintiff to hand over his keys, the Section 1983 claims against the officers failed. *Id.* The same should occur here.

Relying on *Menchaca*, courts have dismissed cases with facts analogous to those alleged here. *See, e.g., Zitta v. Graham*, 996 F. Supp. 2d 272, 283 (D. Vt. 2014) (officer's act of allowing repossessor to leave with vehicle over plaintiff's objection did not amount to state action); *Barrett v. Harwood*, 189 F.3d 297, 303 (2d Cir. 1999) (citing *Menchaca*, holding that "there was no state action that deprived plaintiffs of a property interest" when an officer "was dispatched to the repossession scene for the purpose of maintaining the peace once the [plaintiffs] had exercised their legal right to object to the repossession in a non-violent manner" and after the tow truck was in the process of repossessing the truck); *McIntosh v. Skid Row Hous. Tr.*,

19

No. CV 13-4143 RGK (AJW), 2014 U.S. Dist. LEXIS 100551, at *20 (C.D. Cal. May 29, 2014) (dismissing case at 12(b)(6) stage where plaintiff failed to allege affirmative actions that would "convert [defendants'] presumptively private conduct into state action, an essential element of plaintiff's section 1983 claims against them."). *Menchaca* undercuts Plaintiff's argument that Defendants should be held liable because the vehicle would not have been repossessed "but for" Defendant Godfrey's order for Plaintiff to exit the vehicle. (*See* Compl. ¶ 179, JA33 (alleging that "[t]he repossession would not have occurred but for Godfrey's assistance").)

Similarly, in *Sherry v. Associates Comm. Corp.*, a plaintiff attempted to pursue Section 1983 claims because an officer approached the plaintiff during a confrontation about the repossession of her vehicle and explicitly told the plaintiff: "'You have to let them have the trucks.'" *Sherry*, 60 F. Supp. 2d at 472. The officer's statement allowed the repossessor to take the vehicle. *Id.* However, the court again focused on the level of involvement and rejected the argument that the repossession would not have been successful "but for" the officer's statement regarding the repossession. *Id.* Importantly, in *Sherry*, the officers were present at

the scene, but, as here, did not intervene until *after* a "confrontation" had arisen between the repossessor and the plaintiff. *Id.* at 472; *cf.* Compl. ¶¶ 68-71, JA15 (referring to "argument" between CR and Plaintiff prior to Deputy Godfrey's arrival).

The court in *Mann v. Hillsborough Cty. Sheriff's Office* came to the same conclusion when landlords were repossessing a rented home and, during the process, the officers ordered the plaintiffs-tenants to "leave" the property "to avoid getting into trouble." 946 F. Supp. 962, 965 (M.D. Fla. 1996). The *Mann* court focused on the fact that the officers arrived after the landlord was already on the property, and appropriately rejected plaintiff's Section 1983 claims due to lack of state action. *Id.* at 966-68; *cf.* Compl. ¶¶ 71-74, JA15–16 (alleging that, after "an argument ensued," CR advised HCSO that he was in the midst of "performing a repossession").

Again, in *Brown v. City of Philadelphia*, the officer arrived when the vehicle was already "hooked by its rear wheels[,]" "the tow truck was stopped in the middle of the road[,]" and plaintiff was in the vehicle attempting to thwart the repossession. 2012 U.S. Dist. LEXIS 68851, at *3-4. Like the Plaintiff here, the debtor in *Brown* "refused to exit the

vehicle and explained to [the officer] that he was protesting the repossession" and told the officer that he was obligated under state law "to tell the tow truck operator to come back another time to claim the vehicle." *Id.* This is the exact argument Plaintiff is making here—that Deputy Godfrey, upon hearing Plaintiff's explanation of what occurred before his arrival, should have then ordered the repossessor to leave. (*See* Compl. ¶¶ 125-126, JA21 (arguing that CR "lost right to possession of the Vehicle" once "CR breached the peace" yet "continued with the repossession").) The officer in *Brown* took even more of an active role than what is alleged of Deputy Godfrey: when the plaintiff refused to exit the vehicle, the officer in *Brown* "threatened to break the glass with his baton and remove plaintiff if [he] continued to refuse to exit the vehicle. Plaintiff reluctantly exited the vehicle and the tow truck operator drove away with the vehicle." 2012 U.S. Dist. LEXIS 68851, at *4-5. The court found that the actions of the officers "did not amount to action under color of state law." *Id.* at *16 (internal quotation marks omitted). In doing so, it noted that "the status of the repossession at the time of [the officer's] arrival remains significant to the analysis of their actions… [T]he tow truck operator took possession of the vehicle without police intervention

or assistance." *Id.* at *16-22. The court found it critical that "the tow truck operator *had already secured possession* of the vehicle" before the officers arrived at the scene. *Id.* at *23-24 (emphasis in original); *cf.* Compl. ¶¶ 61-71, JA15 (alleging that a confrontation between Plaintiff and private repossessor CR occurred after tow truck "slid its tow bar under" the vehicle and "lifted" it, and CR refused to drop the vehicle).

### 3. *Plaintiff's Allegations Fall Far Short of State Action.*

Here, when the District Court denied Defendants' motion to dismiss, it relied upon erroneous reasoning: that Deputy Godfrey's actions "might be construed as recognizing the rights of one party over another" or "aid[ing] the repossessor." *See* Order at 11, JA51. As shown in the cases cited above, the District Court's reasoning was misplaced. The focus of the "state action" analysis is *not* whether the deputy took the plaintiff's side in the particular dispute—it is on the level of active officer involvement in the repossession. As noted in *Sherry*,

> A state actor's mistake of law or erroneous determination of legal responsibility should not be a sufficient basis for shifting the state actor's mantle of authority to the private actor who sought his assistance. Something more is required. Were that not so, every request by a party to a dispute that a police officer intervene would have the potential for section 1983 liability where the officer: (1) determined at the scene that one

> disputant's claim of right was superior to the other's; and (2)
> that determination was later held to be legally incorrect.

*Sherry*, 60 F. Supp. 2d at 476. Federal courts consistently have not, and should not, allow a plaintiff to create a breach of the peace and then sue a deputy because he did not take their side in the confrontation. *See Brown*, 2012 U.S. Dist. LEXIS 68851, at *4-5 (no state action where deputy ordered plaintiff to exit the vehicle, siding with tow company); *Barrett*, 189 F.3d at 299 (no state action where deputy threatened to "arrest [plaintiff] if he took any further measures to resist repossession of his truck"); *Zitta*, 996 F. Supp. at 282 (no state action where plaintiff argued that defendant "unlawfully assisted by giving [the repossessor] permission to drive away with the [vehicle]").

Here, Plaintiff has alleged that—after a private party already entered onto Plaintiff's property, attempted to hook Plaintiff's vehicle to a tow truck, and lifted the vehicle in order to tow it away—Deputy Godfrey arrived at the scene and ordered Plaintiff to exit the vehicle. (*See* Compl. ¶¶ 73-81, 90-105, JA15–18.) Assuming all of Plaintiff's allegations are true, the alleged involvement of Deputy Godfrey or the HCSO is insufficient as a matter of law to establish Section 1983 liability. The cases cited *supra* demonstrate that Defendants' limited involvement in

the repossession—which all occurred after CR entered onto Plaintiff's land and lifted the vehicle with the tow truck—cannot be considered state action. As admitted by the Plaintiff, at the point when HCSO first became aware of the repossession, the vehicle was already captured by CR and lifted by CR's tow truck. (Compl. ¶¶ 57-72, JA14–15.) There was an ongoing dispute between CR and Plaintiff because Plaintiff refused to exit the vehicle, which was already on the tow bar and lifted from the ground. (*Id.* ¶¶ 68-72, JA15.) CR called HCSO, and Deputy Godfrey was dispatched, after all of this had already occurred, and Deputy Godfrey merely ordered Plaintiff out of the vehicle thereafter. *Compare id.* ¶¶ 73-81, 95-105 (JA15–18) *with Brown*, 2012 U.S. Dist. LEXIS 68851, at *23-25 (noting that private party already hitched the vehicle to the tow truck when the officer ordered the plaintiff out of the vehicle) *and Mann*, 946 F. Supp. 966-68 (highlighting that the landlords were already on the property prior to law enforcement's arrival).

Because Plaintiff has not plausibly alleged the requisite "state action" or "color of law" requirements under Section 1983, she cannot allege any underlying constitutional violation on behalf of Deputy Godfrey, and the first prong of the qualified immunity analysis fails.

Consequently, the District Court erred when it declined to grant Deputy Godfrey's motion to dismiss on qualified immunity grounds.

## C. Even Assuming Arguendo that Plaintiff Plausibly Alleged a Constitutional Violation, Deputy Godfrey is Entitled to Qualified Immunity Because it was Not Clearly Established, or "Beyond Debate," that His Specific Actions Were Unconstitutional.

As discussed above, the District Court should have concluded that the Plaintiff's constitutional rights were not violated, which would have ended the qualified immunity analysis in favor of Deputy Godfrey. However, even assuming arguendo that Plaintiff could establish some constitutional violation, the second prong of the *Saucier* qualified immunity framework requires the Court to analyze whether the constitutional rights alleged to have been violated were "clearly established" at the time of each officer's specific actions. *Saucier*, *supra*; *Mullenix*, 136 S. Ct. at 308-09 (holding that existing precedent must show that it was "beyond debate" that the officers violated the Constitution).

In denying Defendants' motion to dismiss, the District Court failed to identify any binding case law that would make it clear or "beyond debate" that Deputy Godfrey was violating any constitutional rights, much less any case implying "state action" or "color of law" through the

mere act of ordering Plaintiff to step out of her vehicle which was already attached to the tow truck and lifted. In addressing this second prong of the analysis, the District Court incorrectly relied upon general propositions or case law that is not controlling in the District Courts of North Carolina. *See* Order at 12-14, JA52–54 (citing non-binding case *Goard v. Crown Auto, Inc.*, 170 F. Supp. 3d 915, 920 (W.D. Va. 2016) (citing general propositions regarding "participants in property deprivations without notice" and citing *Soldal v. Cook Cty.*, 506 U.S. 56, 113 S. Ct. 538 (1992) and *Fuentes v. Shevin*, 407 U.S. 67 (1972))).

In *Soldal*, which involved an eviction from a trailer park, the deputies were "notified" and aware of the eviction before it occurred, arrived at the scene before the eviction began, the private actors "arrived at the [plaintiffs'] home accompanied by" the deputy, and the deputy stayed at the scene to insure that the plaintiffs did "not intervene" at all with the eviction. *Soldal*, 506 U.S. at 58 (cited in Order at 14-14, JA53–54). The *Fuentes* case did not deal with any on-the-ground repossession or action by law enforcement; instead, the Supreme Court addressed the constitutionality of "Florida and Pennsylvania laws authorizing the summary seizure of goods or chattels in a person's possession under a

writ of replevin." *Fuentes*, 407 U.S. at 69 (cited in Order at 13-14, JA53–54). These cases are a far cry from what is alleged by the Plaintiff and are simply not analogous.

Under the second prong of the *Saucier* framework, "'[t]he dispositive question is "whether the violative nature of **particular** conduct is clearly established."'" it is *not* whether there are general cases about "self-help repossessions" in the universe of federal case law. *Estate of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 907 (4th Cir. 2016) (quoting *Mullenix*, 136 S. Ct. at 308 (per curiam) (emphasis in original) (quoting *Ashcroft*, 563 U.S. at 742))). Since Deputy Godfrey "did not have sufficiently clear guidance to forfeit qualified immunity[,]" the Section 1983 claim against him should be dismissed. *Estate of Armstrong*, 810 F.3d at 908.

Importantly, courts addressing the subject of vehicle repossessions have explicitly noted that "the United States Court of Appeals for the Fourth Circuit has not had the occasion to examine the state action issue in the context of police involvement with a private repossession." *Morozov*, 2013 U.S. Dist. LEXIS 74603, at *10. Absent such Fourth Circuit guidance, the second prong under *Saucier* cannot be met. This

Court should follow the reasoning in *Meyers v. Redwood City*, 400 F.3d

765, 774 (9th Cir. 2005), which involved an officer's active involvement

in another "messy repossession" that occurred at night. The Ninth Circuit

focused on the utter lack of clarity in the law regarding such situations,

stating:

> [T]he officers could not have determined at what point in the
> middle of this messy repossession they deprived [plaintiff] of
> her property without due process of law. [Plaintiff] may have
> every right to be unhappy with the situation, but the officers
> cannot be faulted for attempting to settle this late-night
> confrontation peacefully. In these circumstances, it would not
> "be clear to a reasonable officer that his conduct was unlawful
> in the situation he confronted." *Saucier*, 533 U.S. at 202.

*Meyers*, 400 F.3d at 774; *accord*, *Kincaid v. City of Edwardsville*, No. 09-

cv-350-WDS, 2010 WL 3937394, 2010 U.S. Dist. LEXIS 105517, at *29-

31 (S.D. Ill. Oct. 4, 2010) (granting qualified immunity in repossession

context, finding "that the officers could not have known that their conduct

was unlawful in the situation they confronted"), *Staten v. Panola Cty.*,

No. 2:13CV483-RSP, 2013 WL 6491443, 2013 U.S. Dist. LEXIS 174384,

at *6 (E.D. Tex. Dec. 10, 2013) (dismissing case and finding that officer

was entitled to qualified immunity, stating that the defendant "merely

permitted [the tow truck] to leave by not intervening to stop it. That is

not a violation of a clearly established constitutional right.").

There is no binding authority in this jurisdiction, or others, that would make it "beyond debate" that Deputy Godfrey's particular actions were a violation of clearly established constitutional law. The District Court's lack of any citations to analogous, binding case law speaks to this issue. *See* Order at 13-14, JA53–54. Thus, even if this Court does hold that the "state action" requirement was plausibly alleged, it can still reverse the District Court's decision because neither Deputy Godfrey nor the HCSO had any guidance in this unaddressed and opaque area of the law. Since Plaintiff has not alleged any constitutional violation—and there is no clearly established precedent that would give Deputy Godfrey notice of any such violation—the qualified immunity inquiry fails on both prongs, and this Court should reverse the District Court's denial of Deputy Godfrey's motion to dismiss.

## III.  Absent an Underlying Constitutional Violation or Municipal Action, the Claims Against Sheriff Coats Also Fail.

Sheriff Coats has been sued in his official capacity only. (*See* Compl. ¶¶ 1, 194, JA8, JA36.) The claims against Sheriff Coats amount to a suit against the Office of Sheriff of Harnett County because an "official-capacity suit is ... treated as a suit against the entity" for which the officer serves. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). It is well

established that a municipality cannot be held liable under Section 1983 where there has been no underlying constitutional violation *Stevenson v. Martin County Board of Education*, 3 Fed. App'x 25, *33 (4th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also Belcher v. Oliver*, 898 F.2d 32, 36 (4th Cir. 1990). For that reason, Sheriff Coats' appeal is inextricably intertwined with that of Deputy Godfrey— if Deputy Godfrey is dismissed on appeal, Sheriff Coats must be dismissed from this action as well. *Belcher v. Oliver*, 898 F.2d at 36. Since, as described *supra* Section II, Plaintiff cannot show any violation of her constitutional rights, and since Deputy Godfrey is entitled to qualified immunity, the District Court erred by declining to dismiss Plaintiff's official-capacity claim against Sheriff Coats.

Alternatively, assuming arguendo that Plaintiff's constitutional rights were somehow violated, Sheriff Coats should nevertheless be dismissed from this action because Plaintiff has not plausibly alleged that any constitutional violations were the result of an official policy, practice, or custom. Official-capacity claims brought under Section 1983 should be dismissed "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Collins v. City of Harker*

*Heights*, 503 U.S. 115, 120-121 (1992) (quoting *Monell*, 436 U.S. at 691). In other words, *respondeat superior* may not serve as the basis for imposing section 1983 liability on a governmental entity. *Collins*, 503 U.S. at 121, 112. Instead, governmental liability attaches only when "execution of a government's policy or custom, whether made by its law makers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 435 U.S. at 694. "Thus, not only must there be some degree of 'fault' on the part of the [governmental entity] in establishing or tolerating the custom or policy, but there also must exist a causal link between the custom or policy and the deprivation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985). In practice, plaintiffs must show (1) that their rights were impaired as a result of an official policy, practice, or custom promulgated by the governmental entity, *Jett v. Dallas Independent School District*, 491 U.S. 701, 735-736 (1989), *Monell*, *supra*; or (2) that their rights were impaired by the act or acts of an individual who has final policymaking authority for the challenged act to establish municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). Since Plaintiff has not plausibly alleged any constitutional violation, and has

offered nothing more than boilerplate allegations regarding the policies and practices of the Office of Sheriff of Harnett County, Sheriff Coats should be dismissed from this action as well.

### CONCLUSION

Plaintiff's attempt to convert a private dispute between herself and a private repossessor into claims under the United States Constitution should have been rejected by the District Court as a matter of law. The District Court committed reversable error when it relied on insufficient allegations amounting to state action, as well as inapposite case law, in denying Deputy Godfrey qualified immunity, and in denying Defendants' motion to dismiss. Under de novo review, Defendants respectfully ask this Court to follow the guidance of other U.S. Courts of Appeal and federal courts on this issue and hold that the Defendants cannot be haled into Plaintiff's dispute with a third party under the facts alleged in the Complaint.

## REQUEST FOR ORAL ARGUMENT

Defendants request oral argument since the decisional process would be "significantly aided" by such argument. *See* Local Rule 34.  This appeal relates to matters of first impression in the U.S. Court of Appeals for the Fourth Circuit; consequently, oral argument could serve to edify this Court and the parties involved.

Respectfully submitted, this 15th day of June, 2023.

/s/ Brian F. Castro
Brian F. Castro
N.C. State Bar No. 53412
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone:  (919) 755-8135
Facsimile:   (919) 755-6163
Brian.Castro@wbd-us.com

*Counsel for Defendants-Appellants*

### CERTIFICATE OF COMPLIANCE

1.  This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    this document contains 6,874 words.

2.  This document complies with the typeface requirements because:

    This document has been prepared in a proportional spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Respectfully submitted, this 15th day of June, 2023.

/s/ Brian F. Castro
Brian F. Castro
N.C. State Bar No. 53412
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone:  (919) 755-8135
Facsimile:  (919) 755-6163
Brian.Castro@wbd-us.com

*Counsel for Defendants-Appellants*